54   413
26a  204
54   413
133  204

# HANNAH STROTHER

### *v.*

# ROBERT LAW.

1. MARRIED WOMEN—*of a power of sale in a mortgage—barring equity of redemption by such sale.*   It is competent for a married woman to join her husband in the execution of a mortgage upon land owned by him, which shall confer upon the mortgagee and his assigns the power to make sale of the premises, in case of default in payment, without a decree for that purpose, so that a sale under such power shall operate to bar the equity of redemption, not only of the husband, but also of the wife, in case she survives her husband.

2. MORTGAGE—*construction thereof, as to the interest which shall pass thereby.*   The *habendum* clause of a mortgage containing a power of sale in the mortgagee, passed " all the right, title, interest, claim, demand and equity " of the mortgagors in the premises; this was held to embrace all possible interest the mortgagors could have, including their equity of redemption, so that a sale under the power would operate to cut off their right to redeem.

3. POWER OF SALE *in a mortgage—whether revoked by the death of the mortgagor.*   Where a mortgage confers upon the mortgagee and his assigns the power to make sale of the premises in case of default in payment, and to convey to the purchaser, that is a power coupled with an interest in the estate, and to be executed in the name of the grantee, not of the grantor, and is irrevocable, remaining unaffected by the death of the mortgagor prior to its being exercised.

4. SAME—*execution of the power by an assignee.*   Where a mortgage gives to the mortgagee or his assigns power to sell in case of default in payment, an assignment of the note secured by the mortgage will vest the power of sale in the assignee.

5. SAME—*designation of place of giving notice—construction thereof.*   A mortgage containing a power of sale, required the notice of the sale to be

published "in a newspaper printed in the Chicago *Times.*" In a proceeding attacking the sale, it was proven the notice was published in the Chicago *Times*, a newspaper published in the city of Chicago, and that there was but one newspaper of that name published in that city. The words "The Chicago *Times*" were inserted in the printed blank in the mortgage usually left to be filled with the name of the place where the newspaper was published: *Held*, the requirement should be construed to mean that the notice should be published in the Chicago *Times*, a newspaper published in Chicago.

6. SAME—*of sales upon credit.* Where a mortgage, which confers the power of sale upon the mortgagee, requires such sale to be made for cash, such requirement must be complied with, and the sale can not properly be made upon credit.

7. Though the mortgagee may, at the sale, give a credit upon that portion of the proceeds which will be coming to him, without violating the terms of the mortgage in that regard.

8. But the mere delay of a few days in closing the transaction, by the making of the deed and payment of the money, such delay not being unreasonable under the circumstances, will not be regarded as the giving of a credit to the purchaser.

WRIT OF ERROR to the Superior Court of Chicago.

The opinion of the court contains a sufficient statement of the case.

Mr. CHARLES C. BONNEY, for the plaintiff in error.

Mr. JOHN N. JEWETT, for the defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The plaintiff in error, as widow of Bolton F. Strother, deceased, claims the right to redeem and to have dower in certain premises described in the bill, which were sold under a mortgage, executed by her and her late husband, to Van H. Higgins. It is not doubted that the mortgage, in its execution and acknowledgment, was sufficient to convey all the right, title and interest of the parties, and to bar their equity of

redemption, if the same was legally foreclosed. It was sought to foreclose the mortgage by a sale out of court, under a clause contained therein, conferring an irrevocable power on the mortgagee and his assigns for that purpose. A sale was made under the authority contained in the mortgage, and deed executed by the mortgagee and his assignee to the defendant's grantor. The words used in the *habendum* are, "all the right, title, interest, claim, demand and equity," and it would seem that the words used are broad and comprehensive enough to convey all possible interest the parties could have in the premises, including the equity of redemption.

The sale was not made, however, until after the death of the mortgagor, Bolton F. Strother, and the power to make the sale after his death is questioned. It is true, that a mere simple power, or naked power, as it is generally termed, to do a thing in the name of, and for the benefit of another, ceases at the death of the grantor. Such is a letter of attorney.

But if the power is coupled with an interest on an estate on which the power is to be exercised, and is to be executed in the name of the grantee, then such power is deemed a part of the estate, and is not dependent on the life of the grantor. And of this nature is a power to sell contained in a mortgage deed, on default of payment. Such power is there coupled with an interest in the estate itself, and does not become inoperative by reason of the death of the mortgagor. The case of *Bergen* v. *Bennett*, 1 Caine's Cases, 1, is in point. That was a bill filed to redeem from a mortgage sale, on the ground that the power was executed after the death of the mortgagor. In that case, the party mortgaged the estate as collateral security, and gave authority to the grantee to sell the estate absolutely; and the court, in a very elaborate opinion, held that the grantee might sell the estate, notwithstanding the death of the grantor. The court, in that case, defined with great accuracy, the distinction between naked powers, and powers coupled with an interest. The learned judge says, "a power simply collateral, and without interest, or a naked power, is when to a mere stranger

authority is given to dispose of an interest in which he had not, before, nor hath by the instrument creating the power, any estate whatever. But when power is given to a person who derives under the instrument creating the power, or otherwise, a present or future interest in the land, it is a power relating to the land."

In the case of *Hunt* v. *Rousmaniere*, 2 Mason, 244, Mr. Justice STORY cites the case of *Bergen* v. *Bennett*, as certainly good law, and as illustrating the distinction between naked powers and powers coupled with an interest, and in commenting on the case, says : " but if he (the grantee) did sell, in whose name was the deed to be made ? Plainly not in the name of the grantor, for he was dead ; but in the name of the grantee, as his own act, in virtue of his power, and as having an interest in the estate conveyed."

In the case before us, the power is irrevocable. It was coupled with an interest in the grantee, in the estate conveyed, and was to be executed in the name of the grantee, and not in the name of the grantor, and was not, therefore, affected by the death of the mortgagor. The grantee has an interest in the power, as well as the estate, and if the same could not be executed after the death of the grantor, it would defeat and destroy the value of such securities. The sale was made in 1862, consequently is not affected by the act of 1869. Gross' Statute, 93, sec. 62.

Several objections are taken to the regularity of the sale, but the one most relied on is, that the sale was made by the assignee of the mortgagee. This objection is met and fully answered by the case of *Pardee* v. *Lindley*, 31 Ill. 174, and it is hardly necessary, now, to discuss it again as an original question. It was there held, that where the mortgage gives to the mortgagee, or his assigns, power to sell upon default in payment, an assignment of the note secured by the mortgage, will vest the power of sale in his assignee. The rule there stated may be said to be the settled law of this State, and has been so long acted on and acquiesced in, that any marked

departure from it now would be disastrous to the rights of parties who have acquired property under it. The rule, however, rests on good authority, and we see no good reason for changing. 4 Kent's Com. 146, 327; *Wilson* v. *Troup*, 2 Cowen, 197; 2 Wash. on Real Prop. 324, sec. 30; *Sargent* v. *Howe*, 21 Ill. 148; *Vanzant* v. *Allman*, 23 Ill. 30; *Bergen* v. *Bennett*, 1 Caine's Cases, 1.

The sale here was made in exact conformity to the rule laid down in *Pardee* v. *Lindley*, and that case must be held to control this. By the express terms of the mortgage, the assignee was authorized to make the sale, which he did do, and executed to the purchaser a deed in pursuance thereof. In accordance with the terms of the mortgage, Higgins, the mortgagee, also executed a deed to Corwith, the purchaser, which must be held to invest him, and consequently his grantee, Law, with the absolute title, if the sale was otherwise regular.

It is further objected, that the provision of the mortgage for a newspaper notice, is void for uncertainty as to the designation of the place of publication, the phrase used being, a newspaper published in " The Chicago *Times*."

It is not denied that the notice was, in fact, printed in " The Chicago *Times*," a newspaper published in Chicago, and for the requisite length of time. Some minor objections are taken to the form of the publication notice. The objection most seriously urged, is, the uncertainty of the place where the notice is to be published. The evidence discloses that the mortgage, except the printed matter, is in the hand writing of the mortgagor, Strother. He evidently intended to provide the particular newspaper, of all the papers published in Chicago, in which the notice should be published, viz: "The Chicago *Times*." The language used can have no other meaning, and certainly makes no other impression on the mind. It requires no forced construction to hold that the words used mean that the notice shall be published in " The Chicago *Times*," a newspaper published in Chicago. The evidence shows that a newspaper of that name was then published in Chicago, and but one of that

name. Its meaning is not doubtful when we remember that the words, "The Chicago *Times*," are inserted in the blank usually left to be filled with the name of the place where the newspaper is published.

It is also urged, as a fatal objection to the sale, that a private credit was given to the purchaser. If the evidence showed that this objection was founded in fact, it would present a serious question for consideration. The express terms of the mortgage required the sale to be made for cash in hand, and neither the mortgagee nor his assignee could vary the terms of the mortgage in that respect. It is a uniform rule that the power must be strictly pursued. Though if, at the sale, the mortgagee chooses to give a credit for the amount due him, it would not be inconsistent with the terms of the mortgage.

We do not understand, from the evidence, that any credit, in fact, was given to the purchaser. The notice specified that the sale would be for cash, and the terms announced at the sale were the same. There was some delay in closing up the transaction, after the sale, which is fully explained by the evidence.

Mr. Drummond, the assignee, resided at Toledo. He came to Chicago to make the sale, and returned perhaps the next day. The deed was prepared in Chicago, and forwarded to him at his home to be executed. In a short period of time the deed was returned, executed, and it was delivered and the money paid without any unreasonable delay.

We are of opinion that the objections urged against this sale, without commenting on all of them, are unavailing.

The equity of redemption of parties, including that of a married woman, who has joined in a mortgage duly executed, may be as effectually barred by a sale regularly made out of court, under a power of sale, coupled with an interest, as under a sale by a decree in chancery. It is the solemn agreement of parties competent to contract, that their equity of redemption shall be so foreclosed and forever barred, and we can perceive no reason, in law or equity, why they should not be bound.

The bill was properly dismissed, and the decree is affirmed.

*Decree affirmed.*