## Chillicothe Paper Co. et al. v. Charles N. Wheeler et al.

1. PRACTICE—*What Questions Must be Raised in Trial Court.*— Equities against certain of the holders of bonds, secured by a trust deed, can not be set up for the first time in a court of appeal.

2. TRUST DEEDS—*What May be Included in a Decree for Foreclosure.*—When a deed of trust, executed to secure bonds, contains a provision giving a trustee the right to declare the bonds due upon default in the payment of interest, and a suit is brought under such provision, at the request of one of the bondholders, the decree may include all the other holders of bonds, whether they formally pray for a foreclosure or not.

3. JUDICIAL SALES—*Who May Bid.*—A holder of bonds, secured by a deed of trust, may bid either for himself, or for himself and other bondholders jointly, at a foreclosure sale made in pursuance of such deed.

Bill, to foreclose a trust deed. Error to the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

## STATEMENT OF THE CASE.

On the 20th of March, 1893, Harvey Lightner and Martin Kingman filed a bill to foreclose a deed of trust upon ten acres of land, and a paper mill plant situated thereon, which had been executed by the Chillicothe Paper Company to secure the payment of forty bonds of $500 each.

The trust deed provided that the grantor should pay all taxes against the property, keep the buildings insured for the benefit of the legal holders of the bonds, etc., and in case of default in the payment of taxes, interest or insurance for sixty days after the same should mature, then at the request of the holder of ten of the bonds the trustee might declare them all to be presently due and payable, and the mortgage might thereupon be foreclosed.

Lightner was the holder of twenty-four of said bonds, and the Chillicothe Paper Company had failed to pay the interest thereon which matured January 1, 1893, and, as provided by the deed of trust, Lightner had made a written request on the trustees to declare the whole of said bonds due and payable, and to foreclose said mortgage. Kingman united with Lightner in his bill because he was trustee.

Answers were filed by the different bondholders other than Lightner, setting forth their respective interests.

Richard A. Culter, one of the defendants, filed an answer showing that the Chillicothe Paper Company was indebted

to him in the sum of $18,830 on its note dated March 25, 1891, which was secured by second mortgage on the prem-,ises, and praying that in case of a sale of the property, the surplus over and above the amount due on the first mortgage should be paid to him.

The Chillicothe Paper Co., The Waterhouse Paper Stock Co., a subsequent purchaser, and James A. Waterman were joined as defendants. They were served with process and defaulted for want of an answer.

The case was referred to the master, who filed his report on June 28, 1893, finding the allegations of the bill to be true; that there was due on the Kingman trust deed:

To Harvey Lightner, complainant.............$12,952.25
To the Central National Bank.................  5,192.10
To George T. Gilliam.........................  3,474.85
To William Schroeder.........................    518.75
To Henry Hirt................................    518.95

The above items of indebtedness were all secured by the trust deed to Kingman. The master further found that there was due to Richard A. Culter, secured by second mortgage, $22,212.10, to James Arkell on a third mortgage $2,120.66, and that a number of judgments existed in favor of divers parties, all of which were liens subject to above mortgages.

The bonds held by the Central National Bank were held as collateral security for two notes held by the bank, one for $2,000 and the other for $3,000 owing by the Chillicothe Paper Co., and signed by James A. Waterhouse as guarantor. The bank held some other collateral, which was then considered of no value.

The master gave notice of his findings to all the parties in interest, and no objections or exceptions were taken thereto.

The master's report was approved by the court, and a decree entered foreclosing, as well, the second and third mortgages, in favor of Culter and Arkell, as the first deed of trust. The aggregate indebtedness due under the three mortgages exceeded $57,500. The decree provided that

unless the amount due be paid within thirty days, the master should advertise and sell the property described in the deed of trust, subject to the right of redemption.

The property was, on August 14, 1893, offered for sale by the master in chancery and was bid in by William Jack, as trustee, for the sum of $35,000, and the master took the receipts of the several parties in interest for the amount to which they were entitled. This sale paid the first mortgage in full, and $11,249.65 upon the Culter mortgage. The sale was approved by the court, and a certificate of purchase was executed by the master to William Jack, in trust.

One year thereafter, upon the ground that the bid was fictitious the plaintiffs in error moved to set aside the sale, which was done without opposition. The property was again, on the 6th of December, 1894, sold by the master, George T. Gilliam being the purchaser, for $18,000. The proceeds of the sale were divided *pro rata* between Lightner, the Central National Bank, Gilliam, Hirt and Schroeder. The plaintiffs in error moved to set aside that sale on the 6th of December, 1895, because of a secret agreement between Gilliam and others of the bondholders, whereby he was to bid in the property for all the bondholders without paying the cash, but the court denied the motion.

McCulloch & McCulloch, attorneys for plaintiffs in error.

Jack & Tichenor, attorneys for defendants in error.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This writ of error is prosecuted for the purpose of having set aside a sale made by the master in chancery under a decree of foreclosure of the real estate and manufacturing plant covered by a deed of trust executed by the Chillicothe Paper Company. Although it is urged that the decree is erroneous, the chief contention is that the court erred in refusing to set aside the sale.

The objections to the decree are rather trivial in their character, and being urged here for the first time, although plaintiffs in error have appeared before the Circuit Court twice and moved to have sales set aside because of irregularities of the manner in which they were made, would not seem worthy of very extended consideration.

There is no claim that the amount found due by the decree was not correct. Nor is it claimed that the complainants in the original bill were not entitled to a foreclosure. There was default in the payment of the interest, and for that reason and by virtue of the provisions in the deed of trust, Kingman, the trustee, had the right to declare all of the bonds due and payable. But it is insisted that as the ten bonds held by the Central National Bank were held as collateral security for the payment of other indebtedness of the Chillicothe Paper Company it was error in the court to decree payment of them on the same terms as the other bonds, and in default of payment, together with the sums due upon the other bonds, to decree a sale of the mortgaged premises without allowing a separate redemption as to the bonds so held by the bank. This contention involves an adjustment of the equities between the Chillicothe Paper Company, Waterhouse and the Central National Bank, and could be disposed of by saying that they were not brought to the attention of the court by bill, answer or otherwise. Plaintiffs in error had ample opportunity to obtain such an adjustment had they seen fit to do so. If the bonds were issued for a special purpose and no right of foreclosure attached to them, then it was their duty, for the protection of other bondholders and creditors of the corporation, to set forth that fact in some proper pleading. But that they failed to do. They suffered default, and must now be held as estopped from operating any equitable interest, prejudicial to other bondholders.

Lightner could not be presumed to know of any secret interest which they may have had in those bonds. The bank held, and had the right to hold, the ten bonds until the debt for which they were held was paid, and there is no reason

why other bondholders should be embarrassed in their rights to a foreclosure and a sale by unsettled equities between the bank, the Chillicothe Paper Company and Waterhouse.

To the error assigned, that the decree of foreclosure as to the ten bonds held by the bank was wrong, because there was no prayer of that kind on the part of the bank, it may be replied, that a formal prayer to that effect was not necessary. When one of the holders of the bonds made it known that there had been default in the payment of interest, and called upon the trustee to join him in a foreclosure, the trustee had the right to declare all outstanding bonds due and payable, and the decree could extend to all holders made parties, whether they formally prayed a foreclosure or not. It was not error to decree a sale of all the machinery, fixtures, tools, etc., covered by the deed of trust with the land. That question was settled by our Supreme Court in Wood v. Whelen, 93 Ill. 153.

It is contended that the sale to Gilliam, one of the bondholders, was void, and should have been set aside because the decree did not give bondholders a right to purchase and because the purchase was made for all the bondholders. This is the first time we have ever heard it urged in this State that a mortgagee can not purchase at a foreclosure sale made for his benefit. For the mortgagee to so purchase is a matter of daily occurrence. Frequently it is the only way in which a mortgagee can protect himself and obtain payment of his debt. He is not bidding at his own sale but at one made by an officer of the court and under the order of the court. Gilliam had the right to bid either for himself or for himself and other bondholders jointly.

There are other points discussed in the briefs, but we do not consider them of such importance as to merit a further extension of this opinion in a consideration of them. There was no error of the court in the decree or in the order overruling the motion to set aside the sale.

Decree and order affirmed.