IOWA LIGHT, HEAT AND POWER COMPANY *vs.* THE FIRST NATIONAL BANK OF BOSTON.

Suffolk.   October 24, 1924. — November 26, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Trust*, Construction of trust instrument.   *Mortgage*, To secure bond issue.

Under a trust mortgage of its property by a corporation, engaged in manufacturing and distributing electricity and owning sundry power stations and other personal property connected therewith, providing in effect that the corporation might sell or otherwise dispose of any of the mortgaged property "that may be no longer used or useful in the conduct of its business" and that the trustee upon the fulfilment of certain conditions "shall release the said property so sold or disposed of" from the lien of the mortgage, the trustee could not be required to release certain property from the lien of the mortgage if it still was being used in the corporation's business, although for some time it had been no longer useful to the corporation and "could not be operated without serious competition" and the gross earning from it had appreciably decreased and would be likely in the future further to decrease, making its further maintenance unprofitable.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on April 12, 1924, seeking to require that the defendant, successor as trustee to International Trust Company, in alleged compliance with the requirements of a trust mortgage given by the plaintiff, release certain property from the lien of the mortgage.

The suit was heard by *Carroll*, J., who ruled as follows: "The only question I am called upon to decide, as I construe

the pleadings, is whether under this certificate, it not being alleged that the property is no longer used, the trustee could release the security.   I rule that these words 'no longer used' are essential, and that under the certificate the trustee is not authorized to release the security, therefore the bill is ordered dismissed, and the case reported to the full court."

The suit accordingly was reported to the full court for determination.

*R. Spring,* for the plaintiff.

*C. O. Pengra,* for the defendant.

*F. D. Comerford,* for Arthur Perry and Company, submitted a brief as *amicus curiae.*

BRALEY, J.   The answer admits the allegations of the bill, from which it appears that the plaintiff, a corporation duly organized under the laws of the State of Iowa, and engaged in manufacturing, distributing, buying, and selling electricity for light, heat and power, was the owner of power stations, substations, poles, wires, meters, and other real and personal property.   By an indenture dated October 2, 1916, a first mortgage on certain portions of the property was given to the International Trust Company, as trustee, to secure the payment of an issue of coupon gold bonds, bearing interest at five per centum payable semiannually, the proceeds of which were to be used in its business.   The plaintiff by subsequent indentures mortgaged to the trust company on March 29, 1917, and January 11, 1922, additional property as security, and on January 12, 1922, by an indenture of trust the rate of annual interest was increased two per centum on bonds issued, or to be issued under the indenture of October 2, 1916.   The plaintiff, acting under and in accordance with these conveyances, and the indenture as to interest, which may for the purposes of the present record be treated as one instrument, has issued and there are outstanding bonds of a face value of approximately $1,900,000.   The defendant bank, because of merger and consolidation described in the bill, has succeeded to all the rights, title and powers of the International Trust Company, and is the trustee for the bondholders.   The value of the property held in mortgage is not stated.   The plaintiff,

however, had a going business, covering a large territory, and apparently is solvent and successful. It may be assumed that it desired to provide for fluctuating financial conditions, and that, if no longer needed, separate and distinct parcels of the mortgaged property might be sold, and the proceeds given to the trustee to be held in substitution of the primary security. But we find in the paragraph numbered 6 of the instrument of October 2, 1916, a provision, which in so far as material reads as follows:

" The Company may from time to time, whenever it is not in default in respect of the bonds or coupons or of any covenant, stipulation or agreement herein contained, sell or otherwise dispose of any of the machinery, equipment or other property, either real or personal, comprised in the trust property that may be no longer used or useful in the conduct of its business, provided that the same be replaced with other property of equal value or the proceeds of such sale to be deposited with the Trustee. And the Trustee shall release the said property so sold or disposed of from the lien of these presents upon receiving a certificate signed by a majority of the directors of the Company, together with an affidavit of the President or Vice-President of the Company countersigned by its Chief Engineer, both reciting that the said property is no longer used or useful in the proper and judicious conduct of the business of the Company, and that the price for which the same has been or is to be sold is fair and represents the true value thereof, and upon receiving satisfactory evidence that the said property has been replaced with other property of equal value which has been subjected to the lien of these presents or that the proceeds of such sale have been deposited as hereinbefore provided . . . ."

A part of the security embraced in the indenture of March 29, 1917, which refers to and incorporates the indenture of October 2, 1916, is a power plant described in the record as the " Grinnell property," which was still being used in the plaintiff's business. The board of directors having passed a resolution to dispose of it, because for some time it had been no longer useful, and could not be operated without serious competition, and that the gross earnings had ap-

preciably decreased, and were likely to decrease in the future, making its further maintenance unprofitable, a duly attested copy of this resolution was filed with the trustee. The president also sent a letter signed by him and attested by the plaintiff's secretary, with the seal of the corporation affixed, reciting the conditions, and requesting a release upon payment of the purchase price, to be held in accordance with the first indenture. The plaintiff also filed with the trustee a certificate signed by a majority of the directors, with an affidavit of the president countersigned by its chief engineer, stating that " said Grinnell property is no longer useful in the proper and judicious conduct of the business . . . , and that the price for which the same is to be sold is fair and represents the true value . . . "

The defendant having declined to act, this suit is brought for equitable relief. It cannot be granted. The power to release forms part of the trust. It can only be exercised upon a strict compliance by the plaintiff with the precedent conditions defined in paragraph numbered 6. *Gibbs* v. *Marsh*, 2 Met. 243. *Sells* v. *Delgado*, 186 Mass. 25, 28. *Murphy* v. *Delano*, 95 Maine, 229; 55 L. R. A. 727. *Wood* v. *Wood*, 5 Paige, 596; 28 Am. Dec. 451. *Colorado & Southern Railway* v. *Blair*, 214 N. Y. 497. The property which under the trust can be sold, is property "that may be no longer used or useful in the conduct of its business," and as the "Grinnell property" is still being used, the preliminary proceedings of the corporation, even if in proper form, wholly fail to show a compliance with the terms of the trust. The single justice correctly ruled, that the words, "no longer used," were essential to a valid certificate, and a decree is to be entered dismissing the bill with costs.

*Ordered accordingly.*