(No. 22885.

THE CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.* Appellants, *vs.* MAX ROBIN *et al.*—(WALTER H. HILDE- BRAND, Appellee.)

*Opinion filed June 18, 1935—Rehearing denied October 8, 1935.*

262

HERRICK and FARTHING, JJ., specially concurring.
WILSON, J., dissenting.

MILLER, GORHAM, WALES & ADAMS, and BERGER & NEWMARK, for appellants.

CONCANNON & DILLON, for appellee.

DON KENNETH JONES, VINCENT O'BRIEN, and RYAN, CONDON & LIVINGSTON, *amici curiæ*.

Mr. JUSTICE ORR delivered the opinion of the court:

The Chicago Title and Trust Company, as trustee, is here, as an appellant, challenging the validity of a decree of the circuit court of Cook county, affirmed by the Appellate Court for the First District, which directed it, as trustee under a deed of trust securing a bond issue, to bid an upset price fixed by the court for property at foreclosure sale and to discharge the indebtedness evidenced by bonds to the amount of the bid. The appeal comes here by a certificate of importance. The principal issue, whether a court of equity, in the absence of express provisions in the trust deed, has the inherent power to order a trustee to bid for trust property at a foreclosure sale, is one of first impression in this State.

The Chicago Title and Trust Company filed its bill to foreclose a trust deed on a Chicago apartment owned by Max and Ida Robin. In 1926 they had borrowed $28,500 on the property, evidencing their debt by seventy-seven bonds secured by a deed of trust. At the time of default (April, 1931,) seventy of the bonds, representing $25,000, remained unpaid. A total of $18,500 of these bonds was deposited by the owners or holders thereof with appellant bondholders' protective committee. The decree of foreclosure entered in March, 1932, directed the sale of the property "at public auction for cash to the highest and best bidder." The property was not sold by the master in chancery until March 2, 1934. During the two-year intervening period the bondholders' protective committee was able to complete negotiations with junior encumbrancers whereby the committee obtained their titles and rights of property. At the sale a representative of the bondholders' protective committee bid in the property for $5000. Of this sum $3254.28 was to be in cash to take care of fees and costs. After applying the bonds and coupons held by the committee to a proportionate share of the remainder there remained $613.38 with the trustee, to be disbursed to the

bondholders who refused to deposit their bonds with the protective committee.

Appellee, Hildebrand, objected to the confirmation of the sale by filing his intervening petition. He owned $1000 of the bonds and refused to become one of the depositing bondholders. In his petition he asserted that the property was worth $35,000 in 1926, was assessed at $17,800 in 1932, and had a present fair value of not less than $16,000. He declared the $5000 bid to be grossly inadequate and a deficiency decree against the Robins to be worthless; that the bondholders would receive less than ten cents on the dollar out of their investment if the sale were approved, and he asked the court to disaffirm the sale, to determine the full fair value of the property, to order a re-sale, with directions to the trustee to bid a certain fixed valuation. In the event the trustee became the successful bidder, Hildebrand asked the court to decree the interests of the bondholders to be personal property and not real estate, alleging their only interest lay in the rents and income from the trust property.

Anna Rychecky, the owner of $1000 of the non-deposited bonds, answered this petition. She took the view that the upset price idea was a worthy one but the foreclosure decree only authorized a sale for cash; that the trustee was not authorized, and could not be authorized, to bid in the property for the benefit of the bondholders, nor could the indebtedness due on the bonds be applied on a bid. She also contended that the court lacked jurisdiction over all of the bondholders, since certain non-depositing bondholders were not made defendants. The answer of the trustee averred that the language of the deed of trust was all-controlling and nothing said therein warranted the construction asked for by the intervening petitioner. In the answer of the bondholders' protective committee it was said the situation of the bondholders would not be bettered by the fixing of an upset price, even if the court had the power

to fix it, which was denied. Its answer concluded with the offer to receive all non-depositing bondholders into the fold of the protective committee upon the same terms as the original depositors or "under such terms and conditions as this court may order."

The decree found the material allegations of the petition to be true; that the non-depositing bondholders were within the jurisdiction of the court as parties to the action upon the theory of representation; that the trust was an active one; that the trust deed did not anticipate the present adverse conditions affecting the realty market in Chicago by incorporating adequate provisions to meet such a situation, and that a construction of the trust deed had become necessary in order to determine the rights, powers, duties and obligations of the trustee. The previous sale was disaffirmed, a re-sale ordered and an upset price of $15,000 was fixed, with directions to the trustee "to bid at such sale * * * and use and apply so much of the indebtedness as may be necessary in making of its bid." In the event no *bona fide* cash bid was made in the sum of $15,000 or more, the trustee was ordered to bid the upset price. Should its bid be successful the certificate of sale was to be delivered to it for the use and benefit of the owners and holders of the unpaid bonds and coupons. Should there be no redemption the trustee was to get a deed, and "hold, manage, operate, lease, sell, convey and otherwise deal with said real estate, as such trustee, for the use and benefit of the owners and holders of said outstanding bonds and interest coupons subject, however, to the further order and direction of this court, and it is further ordered that the right, title and interest of the owners and holders of said bonds and interest coupons in said trust be and they hereby are declared to be personal property and not real estate, and the only right, title and interest of such bondholders to any assets of said trust shall be to receive

their proportionate share of the income, proceeds and avails of said real estate and the other assets of said trust."

No express provision is to be found in the trust deed conferring upon the trustee the right to bid for the trust property at a foreclosure sale or conferring any power upon the court to direct the trustee to bid or to fix an upset price. In addition to the usual powers relating to the payment of taxes, insurance, repairs and liens, the trustee was restricted by the terms of the trust deed, upon certain defaults, to either foreclose or enforce the rights of the trustee and bondholders by appropriate proceedings. The trust deed and bonds constitute a contract between the bondholders themselves, between them as a class and the Robins and the trustee, for they were made at approximately the same time as a part of one transaction. The general rule is that they should be construed together as a single instrument. (*Oswianza* v. *Wengler & Mandell*, 358 Ill. 302; *Crandall* v. *Sorg*, 198 id. 48.) An express statement is not found in the contract between the parties that the trustee shall foreclose on the trust estate and bid at the sale thereof in behalf of the owners and holders of the bonds. The language of the contract, by implication, does not clothe the trustee with power, under the guise of a right, duty or obligation, to bid, as a necessary or incidental act, in order that it may carry out the express objects of the contract. The powers granted to a trustee in a deed of trust are not liberally construed and their exercise must be consonant with the terms of that instrument. (*Iowa Light, Heat and Power Co.* v. *First Nat. Bank of Boston*, 250 Mass. 353, 145 N. E. 433.) Those powers, furthermore, exist only in the terms creating the trust and no others. (2 Perry on Trusts and Trustees, (7th ed.) sec. 602*g*, p. 1027.) Since the contract was carefully drawn and made provision for many contingencies, it may safely be presumed that none of the parties intended that something in addition to its provisions should govern the

trustee. This court does not have the power to import into a contract other or additional provisions. To do so would be making a new contract for the parties. (*Burt* v. *Garden City Sand Co.* 237 Ill. 473.) We cannot construe a contract along the line of what we might believe would be a better contract for the parties to make, as equity vests no wide discretion in the chancellor such as would permit him to disturb contract rights of property. (*Merchants Loan and Trust Co.* v. *Chicago Railways Co.* 158 Fed. 923, C. C. A. 7th, 1907.) A contract right is a property right. (*Kneeland* v. *American Loan and Trust Co.* 136 U. S. 89, 34 L. ed. 379.) Since the rights, duties and obligations of the trustee were contained and defined solely in the trust deed, its duty as trustee was simply to sell the property to satisfy the debt. *Darst* v. *Bates,* 95 Ill. 493.

The Appellate Court in deciding this case felt duty bound to follow its holding in *Straus* v. *Chicago Title and Trust Co.* 273 Ill. App. 63. A vital distinction is to be noted between the two cases on the facts. In the *Straus case* the trust deed gave to any bondholder or the trustee the right to bid on and purchase the trust property at foreclosure sale and to apply the amount due on the bonds in payment of the bid. The bonds in that case were signed by a trustee, who expressly contracted against personal liability. Here the right to bid and so apply the bonds was not contained in the trust deed and the Robins were personally liable upon their bonds. A trustee may be authorized by a trust deed to take the trust property on foreclosure sale for the benefit of all the bondholders and have the necessary or incidental power to bid it in at such sale. But such was not the case here.

In determining whether a court of equity has inherent power to order a trustee to bid in trust property at foreclosure sale in the absence of power given either expressly or by construction of the contract we find a dearth of pertinent decisions. Those we do find are not harmonious

and differ quite markedly in their facts from the case before us. Appellee relies to a great extent upon the case of *Nay Aug Lumber Co.* v. *Scranton Trust Co.* 240 Pa. 500, 87 Atl. 843. It is the earliest authority which directly holds a trustee may purchase the trust property at a foreclosure sale and apply the indebtedness in payment of the bid, even though the trust deed did not expressly confer that power. Two groups of bondholders contended in that case. One group, though not prepared to bid, contended that the property was worth the debt. The other group bid at the sale where the trustee bid in the property to prevent it being sacrificed. The court held that the trustee was bound, in the exercise of discretion and diligence, to act as a prudent man would do in his own affairs and protect the interest of the bondholders. Connecticut adhered to the rule in the *Nay Aug case* in *Hoffman* v. *First Bond and Mortgage Co. of Hartford,* 116 Conn. 320, 164 Atl. 656, where the act of the trustee in bidding in the trust property at a foreclosure sale was approved, although the trust deed did not expressly empower the trustee to do so. This conclusion was reached upon the theory of a necessary implication of power in order that the trustee could perform what the court said was its duty to protect the trust against a sale at an inadequate price. In the Kansas case of *First Nat. Bank in Wichita* v. *Neil,* 137 Kan. 436, 20 Pac. (2d) 528, a decree foreclosed the lien of a trust deed. No bidders appeared at the sale and the trustee petitioned for permission to bid in the property for the benefit of the bondholders. Over the objections of a bondholder the trustee was allowed to bid. Iowa has faintly applied the *Nay Aug* rule in *Silver* v. *Wickfield Farms,* 209 Iowa, 856, 227 N. W. 97. The trust deed there involved expressly provided that the trustee could bid in the property at a foreclosure sale in order to protect the interests of the bondholders. What the court said in that case about the trustee having power, by implication, to bid in the property was

not necessary to the decision and must be looked upon as *obiter dictum*. In *Kitchen Bros. Hotel Co.* v. *Omaha Safe Deposit Co.* 126 Neb. 744, 254 N. W. 507, the foreclosure decree expressly provided that the trustee could bid in the property for the bondholders' benefit. The holder of a large block of bonds intervened by petition to have the decree modified by revoking the authority of the trustee to bid. The petition was denied, and on appeal the lower court was upheld on the ground that the trust deed expressly provided the trustee could purchase at a foreclosure sale. The opinion would lead readers to infer that the trustee possessed the implied power to bid in the property under the decree and guidance of a court of equity where he was not expressly authorized by the trust deed. This also appears to be *obiter dictum,* as it was not germane to the issue. A Florida case, *Smith* v. *Massachusetts Mutual Life Ins. Co.* 156 So. 498, holds that where a trust deed contained the express provision authorizing the trustee to bid in the trust premises for the benefit of all the bondholders it may do so. It was further said it had implied power to do so when it lacked express power. In *James* v. *Cowing,* 82 N. Y. 449, the trustee could point to express authority in the trust deed to make a bid at a foreclosure sale.

Appellants rely upon a series of cases starting with *Equitable Trust Co.* v. *United States Oil and Refining Co.* 35 Fed. (2d) 508 (1928.) The district court there said: "The question is fairly raised as to whether or not the court may authorize, lacking a provision in the trust deed, a trustee to become a bidder for all the bondholders at a sale of the property and to offer as a portion of said bid in consideration of the sale price the debt secured by the trust deed in lieu of cash," and, after referring to the *Nay Aug case,* continued: "I am unable to bring myself into accord with the reasoning of the court in the case cited. As it appears to me, the purchaser and holder of bonds

had the right and reason to expect that, if there were a default in the payment of bonds under the trust deed, in case of foreclosure the property would be sold, and that he would receive his proportionate amount which the property realized in cash, and moreover I believe that this should be his right." The above case and the *Nay Aug case* were the first ones presenting different views on the same question. The *Equitable Trust Co. case* was in court again as *Werner, Harris & Buck* v. *Equitable Trust Co.* 35 Fed. (2d) 513, (C. C. A. 10th, 1929,) on an appeal from an order confirming the sale held under the order mentioned in the other citation. It was said: "The trust deed contained no provision authorizing the trustee to bid at the sale for and on behalf of the bondholders. * * * Upon due consideration of the matter, the trial court correctly came to the conclusion that there was no power in the court to compel the holder of a single bond to participate in a bid for the property if he did not wish to do so; that the rights of the bondholders were measured by their bonds and the trust deed securing the same, and, absent any provision therein authorizing the trustee to bid for and on behalf of the bondholders, there was no power in the courts to confer such authority upon the trustee. * * * Each bondholder has the absolute right to determine for himself, in case of default, whether he shall take his loss and quit, or continue to gamble; if the property is sold at public sale, he has a right to take his proportion of the best bid that can be secured in cash, and cannot be compelled to become an owner of an undivided interest in the property." In 1883 the Supreme Court of Iowa, in *Sanxcy* v. *Iowa City Glass Co.* 63 Iowa, 707, 17 N. W. 429, was presented with a case where the trust deed did not authorize the trustee to bid in the foreclosed property. It was held that the court did not possess the power to enter a decree which might in any event impair the security of the intervenor for the payment of the money due him. There was "no

rule of law, and surely there is no equitable principle, by which a creditor is bound to take property in satisfaction of his debt, and at a price to be fixed by another, unless he has contracted so to do." *Bradley* v. *Tyson,* 33 Mich. 337, involved a bid by the trustee, under a mortgage, on behalf of all bondholders. The bid was confirmed and certain bondholders appealed. It was ordered that the sale be set aside unless the objecting bondholders got their proportionate share in cash. It was for the creditors, and not the trustee, to see that the property was not sacrificed. Michigan afterwards adopted a statute authorizing a bid by the trustee on behalf of all bondholders where no bid has been made at a sale, or it appears that a bid will not be had for a sum representing the fair value of the property and where a majority of the bondholders have requested the trustee to bid. This statute was held unconstitutional in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.* 257 Mich. 655, 242 N. W. 227, on the ground that the statute impaired the obligations of the contract of the non-assenting bondholders. The court said: "A bondholder has the right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with the right to look to the responsibility of the mortgagor for a proportionate share of the deficiency. He is not bound to become the owner in common of a beneficial interest in a trust which may run on for many years and from which he may realize cash, stocks, bonds or other securities that eventually may net him more or less than the amount he would have received had the property been sold for cash." The latest case cited by appellants is from Colorado and was decided in December, 1934. (*Cosmopolitan Hotel Co.* v. *Colorado Nat. Bank of Denver,* 40 Pac. (2d) 245.) There a foreclosure sale was held under a deed of trust securing a bond issue. Over protest of the holder of some of the bonds the trial court authorized the trustee to bid at the sale; if

the bid were accepted the trustee was to use the foreclosure judgment in payment. It was contended that the trust deed required the sale to be for cash, consequently the court was without power to strip the bondholders of their contract rights without their consent and throw them into a joint ownership venture. It was decided that the lower court could not so authorize the trustee because of two provisions in the trust deed, the first creating an equality of rights for the bondholders, the essence of which was freedom from domination by any or all other bondholders, and the second conferring upon the bondholders the right to be paid the principal and interest in a ratable manner and in the event of default to enjoy the benefits of foreclosure in accordance with the terms of the trust deed. In an exhaustive and well-reasoned opinion, in which the cases we have heretofore cited were thoroughly examined, the court there held that the trustee had only the specific power to sell and to sell for cash only.

Appellee has not cited a case similar to the case before us where the trustee was ordered to bid. In cases cited *supra* where the trustee's bid on behalf of the bondholders has been directly attacked, or in which the sale was to be made, the trustee sought to bid. Here the trustee has opposed the intervening petitioner, who has endeavored to force it to bid. The *Kitchen Bros. Hotel Co. case* cannot be looked upon as persuasive either way, for a minority bondholder sought to prevent bidding when the trustee was specifically authorized to do so by the trust deed. The case of *James* v. *Cowing* was based upon express authority to bid, and the objector was a minority bondholder who had stipulated in the lower court that the trustee might bid on behalf of all. In the other cases falling within this category the trustee was not authorized to bid. In the case of *First Nat. Bank in Wichita* v. *Neil,* where the trustee was allowed to bid, only one bondholder objected, and the court leaned heavily upon the theory that minority

bondholders should not be allowed to dictate to the holders of a majority of the bonds. In four cases, *Werner, Harris & Buck* v. *Equitable Trust Co., Bradley* v. *Tyson, Sanxcy* v. *Iowa City Glass Co.,* and *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* permission to the trustee to bid was refused on account of lack of power to bid. The fact that a majority of the bondholders wanted the trustee to bid made no difference. In view of these authorities it is our opinion that here the chancellor had no inherent power to order the trustee to bid at the foreclosure sale, and thus, in effect, make a new contract between the parties.

What we have said above applies with equal force to the action of the chancellor in fixing an upset price below which the property could not be sold. The existence of financial panic does not warrant the setting aside of well known rules of law to meet an alleged emergency. Public policy and the interests of debtors require that stability be given to judicial sales, and they should not be disturbed unless there has been some fraud, mistake or violation of duty by the officer making the sale or by the purchaser, none of which is shown here. Mere inadequacy of price, alone, is not cause for setting aside a judicial sale. *Worden* v. *Rayburn,* 313 Ill. 495; *Skakel* v. *Cycle Trade Publishing Co.* 237 id. 482.

In view of our conclusion it is unnecessary for us to consider any further points raised by appellants.

The judgment of the Appellate Court and the decree of the circuit court are both reversed and the cause is remanded to the circuit court. *Reversed and remanded.*

HERRICK and FARTHING, JJ., specially concurring: We agree with the result reached in this opinion but not with what is said therein with reference to the lack of power in the chancellor to fix an upset price for the sale.

Mr. JUSTICE WILSON, dissenting.