Melvin L. Straus, Appellee, v. Clarence A. Anderson et al., Defendants.

Appeal of Harold Factor, Appellant, v. Melvin L. Straus, Complainant, and George W. Rossetter et al., Appellees.

Gen. No. 37,949.

Opinion filed December 27, 1935. Rehearing denied and opinion amended January 7, 1936. Additional opinion filed February 5, 1936.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellant; MEYER ABRAMS, of counsel.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, JUDAH, REICHMANN, TRUMBULL, COX & STERN and GOTTLIEB & SCHWARTZ, all of Chicago, for appellees.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by Harold Factor from an order entered in the circuit court of Cook county refusing

leave to file his intervening petition, and also overruling his objections filed to the master's report of sale and distribution and the plan of reorganization offered by the so-called First Mortgage Bondholders' Committee.

On January 18, 1932, Melvin L. Straus, as trustee, under a certain trust deed, notified the mortgagor, Clarence A. Anderson and Harriett Smulski and Marion Koscinski, named therein, the then owners of the equity, of the existence of certain defaults in the payment of the monthly deposits on account of the principal and interest of bonds due April 1, 1932, and of the defaults in the payment of the balance of 1928 and 1929 general taxes, and advised them that pursuant to the provisions of the trust deed, they had 30 days within which to cure these defaults.

It appears from the record that on April 19, 1932, the defaults not having been cured, the trustee, in accordance with the provisions of the trust deed, accelerated the unpaid balance of the bonds secured by the trust deed in the principal amount of $230,000, and filed his bill for foreclosure. After negotiations with the owners of the equity, and in accordance with the provisions of the trust deed, actual possession of the property was surrendered to the trustee by an instrument in writing dated March 30, 1932.

It also appears as a part of the record that the trustee went into possession, and that all income from the property since April 1, 1932, has been accumulated by the trustee for the benefit of all bondholders. On December 1, 1932, the court entered a decree of foreclosure and sale, based upon the master's report theretofore rendered. The decree provided that the master should report the result of the sale to the court for its approval.

The parties to this litigation are the complainant, who is the trustee and who filed the bill of complaint

in a representative capacity pursuant to the provision
of the trust deed that all right of action to institute
and prosecute foreclosure proceedings is vested in the
trustee; the defendants, Marion Koscinski and Har-
riett Smulski, who were the owners of the equity; the
defendant Clarance A. Anderson, the mortgagor who
had theretofore divested himself of title to the prop-
erty, and other defendants were various parties hav-
ing interests in the second and third mortgages in the
amounts, respectively, of $100,000 and $60,000. The
bondholders under the first mortgage trust deed were
not named as parties defendant for the reason that
the provisions of the trust deed provided that in fore-
closure proceedings the trustee should act as their
representative.

It also appears from the record that on June 23,
1934, a motion for leave to file an intervening petition
on behalf of Harold Factor was presented to the court
and continued until the September term of court; that
on August 23, 1934, the master advertised the premises
for sale, and the property was bid in by Irving Feld-
inger, who was the nominee of the Dellashore Apart-
ments First Mortgage Bondholders' Committee, a
voluntary organization of bondholders, for $35,000,
subject to unpaid taxes in the approximate amount
of $25,000, exclusive of the 1933 and 1934 taxes, which
had not been billed.

The record also shows that on August 31, 1934, the
committee asked leave to file its petition setting forth
that it represented at that time the holders of $173,200
principal amount of the outstanding bonds and that it
had caused Irving Feldinger to bid at the master's
sale as its nominee; that it had promulgated a plan of
reorganization for the property known as the "Della-
shore Apartments," and that it desired the court to
consider the plan of reorganization, a notice of adop-
tion and summary of which had previously been sent

to all known bondholders on July 18, 1934; that it desired to accord to all bondholders who had previously deposited their bonds, an opportunity to participate in the plan of reorganization upon such terms as the court might direct, and that it desired that the court supervise the consummation of the plan of reorganization.

The court entered an order allowing the committee to file its petition, and directing the master to notify all bondholders who had not theretofore deposited their bonds with the committee and whose names were to be furnished to the master by the committee, that a hearing would be had on September 12, 1934, at which time the court would pass upon the master's report of sale and distribution and the plan of reorganization, and at which time any bondholder might present objections to the report of sale and distribution and to the plan.

The master, pursuant to the direction of the court, sent a notice to all nondepositing bondholders on August 31, 1934, in which he advised them, among other things, that their pro rata share of the foreclosure sale price would be approximately 11 cents on the dollar, and that any bondholder might file objections to the confirmation of the sale and the approval of the plan.

Objections were filed on behalf of Harold Factor, the appellant, and included in the objections were the facts set forth in the intervening petition filed by this petitioner, and which is now pending before the court on his motion to intervene.

At the hearing on the confirmation of the master's report of sale and the plan of reorganization, no bondholder other than the objector filed objections or appeared in person or by counsel to object to the sale or the plan.

After a hearing on the report of sale and distribution and on the plan of reorganization and the objections thereto filed, the chancellor denied leave to file the intervening petition and entered an order approving the report of sale and distribution and the plan of reorganization submitted by the committee. This order further found that Clarence A. Anderson was liable for the deficiency in the amount of $243,115.67. The order further provided that all bondholders who had not theretofore deposited their bonds with the depositary of the committee might have 120 days from the date of the entry of the order in which to deposit their bonds and participate in the plan of reorganization. At the time of the entry of the order, there had been deposited with the committee additional bonds in the amount of $7,100, making the total amount of bonds on deposit $180,300, or approximately 78 per cent.

We will refer to Harold Factor in this opinion as the objector for the purpose of brevity.

This objector contends that it was improper to allow intervention to one class of bond owners, designated as the committee, and at the same time to deny intervention to a bondholder who presented his intervening petition in person; that the pretended sale which disposed of the property at $35,000 would yield to the nondepositing bondholders only 11 cents on the dollar, which was not a proper sale price for the property in question.

The master in chancery filed his report of sale and distribution, which was dated August 31, 1934. The master reported that he sold the property on August 23, 1934, pursuant to the decree, to Irving Feldinger for $35,000 in cash and unpaid bonds and coupons and distributed as follows: $1,276.05 in payment of master's fees and expenses; $53.90 for costs; $7,262.55 balance of trustee's prior lien in the amount of

$11,924.63, including trustee's fees, solicitors' fees and court reporter's fees (paid on account as per decree of December 1, 1932, $4,662.08); a total of prior liens paid $8,592.50, leaving a balance for distribution of $26,407.50. This bid of $35,000 for the real estate, together with the improvement is rather startling when we consider that the improvement on this property is a nine-story fireproof apartment building consisting of nine apartments, which had an incumbrance of $300,000 first mortgage, $100,000 second mortgage and $60,000 third mortgage. While the court in the approval of a bid offered for property sold by a master under a decree of court is vested with a broad discretion, the fact that the bid of itself is inadequate is not always to be considered as an abuse of the court's discretion in approving such sale.

The objector in this proceeding contends that the whole proceeding, so far as it is material upon this question, was collusive and fraudulent, and part of a scheme to deprive the bondholders of the value of their securities; that the sale was fictitious and ought not to receive the stamp of approval of a court of equity; that if there were a redemption for $35,000 by a proper person coming within the terms of the statute of this State, it would present a situation that would perhaps result in the loss to the bondholders of their invested money, except as to the proportionate share of each dollar invested from the balance of the bid after the allowance of proper deductions.

The approval of a master's report of sale and distribution should be carefully considered by the court, and the sale should not be approved when it is apparent to the court that the sale is so inadequate as to be unreasonable and sufficient to excite suspicion. The bid reported by the master was so grossly inadequate as to be inequitable.

Questions upon the adequacy of the sale price of real property by a master who was directed by a de-

cree in a foreclosure proceeding have been before this court a number of times, and the general rule is well stated in the case of *Slack v. Cooper*, 219 Ill. 138, where the court uses this language:

"The master is a ministerial officer for the purpose of carrying into effect the decree of the court, and his acts are binding only when approved by the court. If the chancellor finds, upon the coming in of the report of a master, that the sale as made is not to the best interest of all concerned and is inequitable, or that any fraud or misconduct has been practiced upon the master or the court or any irregularities in the proceedings, it is his duty to set aside the sale as made and order another sale of the premises. The chancellor has a broad discretion in passing upon the acts of the master and approving or disapproving his acts in reference to sales and entering its own decrees."

Complaint is made that a representative of some of the bondholders bid at the sale of the real property on the date of the sale by the master. The law is well settled that a mortgagee may bid at a foreclosure sale made for his benefit and for his protection. By such means he may be able to obtain payment of his debt. If the mortgagee has the right to bid in person, he may also offer a bid by his agent. By direction of the bondholders, a representative may bid to satisfy the amounts due on their several bonds. This court upon this very question, in the case of *Chillicothe Paper Co. v. Wheeler*, 68 Ill. App. 343, said:

"It is contended that the sale to Gilliam, one of the bondholders, was void, and should have been set aside because the decree did not give bondholders a right to purchase and because the purchase was made for all the bondholders. This is the first time we have ever heard it urged in this State that a mortgagee cannot purchase at a foreclosure sale made for his benefit. For the mortgagee to so purchase is a matter of daily occurrence. Frequently it is the only way in which

a mortgagee can protect himself and obtain payment of his debt. He is not bidding at his own sale but at one made by an officer of the court and under the order of the court. Gilliam had the right to bid either for himself or for himself and other bondholders jointly.''

There can be no question that several bondholders may enter into an agreement to protect their several interests and provide by the agreement that a bid may be offered on behalf of the bondholders at a master's sale in a foreclosure proceeding in which the bondholders are interested. If the bid of the bondholders offered at such sale is approved and a deed to the property issued in due course, the title to this property will be held in the manner provided for in the contract of the bondholders, but, in the instant case, the serious question is: Has the court in a foreclosure proceeding jurisdiction to permit representatives of a bondholders' committee to intervene after a decree for a sale of the property is entered, and in their petition pray that the court pass upon the advisability and fairness of the contract which had been entered into by individual bondholders not parties to this litigation, other than through the trustee, the representative of the bondholders in the foreclosure proceeding? The purpose of a foreclosure suit is to satisfy the indebtedness secured by a mortgage or trust deed, by the entry of a decree so that the equity of redemption of the owners of the title to the real property may be foreclosed. In this case the court permitted an intervening petition to be filed, and upon notice and after a hearing, approved the master's report of sale and the plan of reorganization submitted by the bondholders' committee. It is to be noted that under the plan of reorganization the court is to supervise the consummation of the plan. This plan submitted to the court for its approval is but a declaratory decree and in our opinion is not germane to the issues involved, nor does it settle the rights of the parties in interest.

The nondepositing bondholders who are not parties to this plan of reorganization contract are not before the court, and it is doubtful whether such bondholders would be properly before the court by the service of a notice to appear and object. It is to be noted that those bondholders who have not joined in the reorganization plan are given 120 days from the entry of the order in which to make up their minds as to whether they will submit their bonds to the control of the bondholders' committee.

The plan of reorganization was already approved by the court, so that it would seem from the order itself that it would be futile for the nondepositing bondholders who filed subsequent to the approval of the court of the contract to object.

The only objections filed were those by Harold Factor, who objected to the sale and the proposed plan of the committee for reorganization. He indulges in severe criticism of the object of the plan and the means by which control of the property is provided for. However, we do not deem it necessary to consider these criticisms, for the reason stated in our opinion that the question is as to the jurisdiction of the court, under the pleadings in the instant case, to pass upon the advisability of the plan of reorganization. As we have already indicated, we do not think it decides any of the issues involved in a foreclosure proceeding. The decretal order entered upon the request of the interveners is not one that can be enforced.

A rather significant statement by the Supreme Court appears in its opinion in the case of *Lonergan v. Goodman,* 241 Ill. 200, where the court says:

"Whether the complainant will ever acquire any title to the lot depends upon his payment of the purchase price within the time agreed upon, and the only possible effect of a decision of the question discussed by counsel would be to have this court certify what title Harry Goodman now has and what title the com-

plainant will acquire if he chooses to avail himself of the option. The bill states all the facts upon which the question of title depends and the plea merely reiterates the same facts with immaterial additions, so that there appears to be no real controversy between the parties, and a court cannot properly be used, for mere business reasons, to decide whether the complainant will get an absolute estate in fee on complying with the terms of the option, or a limited estate.'' This statement is applicable to the facts in the instant case, where the interveners, the First Mortgage Bondholders' Committee, seek to use the equity powers of a court of chancery for purely business reasons; in other words, to have the court approve a contract entered into by a group of bondholders to induce nondepositing bondholders to join in this contract.

The basis of this litigation is the trust deed and the bonds constituting the contract between the holder of the equity of redemption, the trustee named in the trust deed and the several bondholders. This contract is controlling and whatever rights the several parties have are by reason of the express provisions of the contract. The well established rule of law is that the court is not vested with the power to add to or subtract from the contract. The contract, by its terms, cannot be construed to grant to a group of bondholders the right by an intervening petition to ask for the court's approval of their plan of reorganization which is based upon a bid at the sale of the property and the anticipated title to the property. The court in its exercise of jurisdiction should consider and protect the rights of all the bondholders. The trust deed does not provide that the plan of reorganization presented to the court may be approved and have a binding effect on any of the bondholders. As we have already stated in our opinion, the plan submitted is outside the purpose and terms of the trust deed involved in the fore-

closure proceeding, and it should not have been considered by the trial court.

The Supreme Court of this State, in a late authority, *Chicago Title & Trust Co. v. Robin,* 361 Ill. 261, passed upon the question of the binding effect of the provisions of the trust deed, and we believe the court's decision is controlling upon the several questions involved in the present litigation. The court there said:

"The trust deed and bonds constitute a contract between the bondholders themselves, between them as a class and the Robins and the trustee, for they were made at approximately the same time as a part of one transaction. The general rule is that they should be construed together as a single instrument. (*Oswianza v. Wengler & Mandell,* 358 Ill. 302; *Crandall v. Sorg,* 198 id. 48.) An express statement is not found in the contract between the parties that the trustee shall foreclose on the trust estate and bid at the sale thereof in behalf of the owners and holders of the bonds. The language of the contract, by implication, does not clothe the trustee with power, under the guise of a right, duty or obligation, to bid, as a necessary or incidental act, in order that it may carry out the express objects of the contracts. The powers granted to a trustee in a deed of trust are not liberally construed and their exercise must be consonant with the terms of that instrument. (*Iowa Light, Heat and Power Co. v. First Nat. Bank of Boston,* 250 Mass. 353, 145 N. E. 433.) These powers, furthermore, exist only in the terms creating the trust and no others. (2 Perry on Trust and Trustees, (7th ed.) sec. 602g, p. 1027.) Since the contract was carefully drawn and made provision for many contingencies, it may safely be presumed that none of the parties intended that something in addition to its provisions should govern the trustee. This court does not have the power to import into a contract other or additional provisions.

To do so would be making a new contract for the parties. (*Burt v. Garden City Sand Co.*, 237 Ill. 473.) We cannot construe a contract along the line of what we might believe would be a better contract for the parties to make, as equity vests no wide discretion in the chancellor such as would permit him to disturb contract rights of property. (*Merchants Loan and Trust Co. v. Chicago Railways Co.*, 158 Fed. 923, C. C. A. 7th, 1907.) A contract right is a property right. (*Kneeland v. American Loan and Trust Co.*, 136 U. S. 89, 34 L. Ed. 379.) Since the rights, duties and obligations of the trustee were contained and defined solely in the trust deed, its duty as trustee was simply to sell the property to satisfy the debt. *Darst v. Bates,* 95 Ill. 493.''

The Supreme Court quoted from the case of *Detroit Trust Co. v. Stormfeltz-Lovely Co.*, 257 Mich. 655, 242 N. W. 227, as follows:

''A bondholder has the right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with the right to look to the responsibility of the mortgagor for a proportionate share of the deficiency. He is not bound to become the owner in common of a beneficial interest in a trust which may run on for many years and from which he may realize cash, stocks, bonds or other securities that eventually may net him more or less than the amount he would have received had the property been sold for cash.'' The Supreme Court also said in the case of *Chicago Title & Trust Co. v. Robin, supra:*

''The latest case cited by appellants is from Colorado and was decided in December, 1934. (*Cosmopolitan Hotel Co. v. Colorado Nat. Bank of Denver,* 40 P. (2d) 245.) There a foreclosure sale was held under a deed of trust securing a bond issue. Over protest of the holder of some of the bonds the trial

court authorized the trustee to bid at the sale; if the bid were accepted the trustee was to use the foreclosure judgment in payment. It was contended that the trust deed required the sale to be for cash, consequently the court was without power to strip the bondholders of their contract rights without their consent and throw them into a joint ownership venture. It was decided that the lower court could not so authorize the trustee because of two provisions in the trust deed, the first creating an equality of rights for the bondholders, the essence of which was freedom from domination by any or all other bondholders, and the second conferring upon the bondholders the right to be paid the principal and interest in a ratable manner and in the event of default to enjoy the benefits of foreclosure in accordance with the terms of the trust deed. In an exhaustive and well-reasoned opinion, in which the cases we have heretofore cited were thoroughly examined, the court there held that the trustee had only the specific power to sell and to sell for cash only.''

For the reasons appearing in this opinion the orders appealed from are reversed and the cause remanded with directions that a resale of the property be had in compliance with the terms of the decree.

*Orders reversed and cause remanded with directions.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.

ADDITIONAL OPINION.

MR. JUSTICE HEBEL delivered the additional opinion of the court.

Subsequent to the filing of the opinion of the court in this case and upon denial of a petition for rehearing, a petition and suggestions were presented to this court by Messrs. Don Kenneth Jones and Vincent O'Brien,

attorneys and members of the Chicago Bar, for leave to appear as *amicus curiae,* and that the court take into consideration the suggestions filed, which the court allowed.

The suggestions are in relation to questions involving the sale of real estate based upon a decree in a foreclosure proceeding, and the approval of the bid and the approval of contracts presented in such foreclosure proceeding for what is called a reorganization plan, and are in support of the theories advanced and so graciously submitted by counsel as an aid to the court.

By the suggestion upon the question of the approval of the bid offered at the sale provided for in the decree of foreclosure, the court is reminded that unless the trial court can find that the grossly inadequate price offered at a sale provided for in a foreclosure decree is coupled with fraud, mistake or a violation by the officer conducting the sale, the duty of the court is to approve such sale, for the reason that gross inadequacy in price alone would not justify the trial court in refusing to stamp with approval such sale.

In the consideration of this question of gross inadequacy it is well to have in mind the words of the Supreme Court in the case of *Davis v. Chicago Dock Co.,* 129 Ill. 180:

''However this may be, the authorities are uniform that where property has been sold, upon execution or at judicial sale, at a grossly inadequate price, even slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser, or the party to the record benefited by the sale, will furnish sufficient ground for equitable interposition. The conscience of the chancellor, quickened by proof of circumstances indicating that an unfair advantage was sought or taken, will seize upon the gross inade-

quacy as additional and strong evidence of fraud, and, by decree, prevent the purchaser from reaping an unconscionable advantage. Thus, in *Hamilton v. Quimby, supra,* it was said, that if the execution had been properly issued, and the officer had performed his duty by giving the defendant notice of the writ, and a sale had been made of a large amount of property for a very small sum of money, 'the sale ought not to have been set aside for mere inadequacy of price; but even then, where there is such gross inadequacy, the court will seize upon anything indicating unfairness in the plaintiff, to afford relief.' See also *Comstock v. Purple, supra; Hinney v. Knoebel,* 51 Ill. 112; *Berry v. Lovi,* 107 id. 612; *Howell v. Baker,* 4 Johns. Ch. 122; *Kloepping v. Stellmacher,* 21 N. J. Eq. 328; *American Wine Co. v. Scholer,* 85 Mo. 496; *Johnson v. Craul,* 55 Texas 571; *Seaman v. Riggins,* 1 Green's Ch. 214; *Bixby v. Mead,* 18 Wend. 611; *Roberts v. Roberts,* 13 Gratt. 639; *Bod v. Ellis,* 11 Iowa 97, and cases *supra.*

"It will not be necessary to extend this opinion by quotation from the cases. Upon examination it will be found that various incidents have been seized upon by the courts to grant relief where there has been a gross inadequacy of price; and the additional circumstances need not be sufficient, in themselves, to authorize the sale to be set aside, if they tend to show that an unfair advantage was taken, or that the sale was conducted in a manner prejudicial to the rights or interest of the parties interested, for while gross inadequacy of price will not, of itself, be sufficient, yet, when coupled with other circumstances tending to prove fraud, it becomes controlling and conclusive evidence, and justifies the interference by a court of equity to prevent the consummation of an inequitable result."

In the case of *Miller v. McAlister,* 197 Ill. 72, citing with approval *Davis v. Chicago Dock Co., supra,* the court said:

"Where property has been sold upon execution, or at a judicial sale, at a grossly inadequate price, even slight circumstances, indicating unfairness or fraud, either upon the part of the officer, the purchaser, or the party to the record benefited by the sale, will furnish sufficient ground for equitable interposition. Where the inadequacy is gross, the purchaser can retain his advantage only by showing that he acquired title by proceedings free from fraud or irregularity. (*Parker v. Shannon,* 137 Ill. 376, and cases cited on p. 372; *Davis v. Chicago Dock Co.,* 129 id. 180; *Hebson v. McCambridge,* 130 id. 367.)"

The sale in the instant case was the result of a decree of foreclosure. The bid of $35,000 was offered by a nominee for a group of bondholders and subsequently approved by the court. This bid was offered, as we have already stated in our opinion, for a 10-story fireproof building, containing 9 apartments, all occupied by tenants. On this property there was an original incumbrance of $300,000, which is the subject of this foreclosure proceeding, a subsequent incumbrance of $100,000, and a third of $60,000.

What we would like to stress is that the income at the time of the sale and which was collected in gross, was $23,384.51, and there was paid in operating expenses $11,460.94, leaving an operating income of $11,923.57.

It follows that in the course of time if this bid stands approved, a deed will issue to the bidders and the property will be free and clear of the mortgage liens, and subject only, as far as we can determine from the record, to unpaid taxes.

An unfair advantage was taken by this group of bondholders in seeking to obtain this property for the

amount of the bid. The property at the time of sale was earning a net income of approximately $11,923.57. This sum is nearly one-third of the purchase price, and we are of the opinion that there is such a gross inadequacy of price that an unfair advantage has been taken by the bidder, not alone in the price, but when coupled with the income, such an unconscionable advantage that the court erred in approving the sale.

The court, constituting the third division of the Appellate Court of this District, is of the opinion, and rightly so from the record, that in a foreclosure proceeding such as this, an agreement by a number of bondholders to bid and then to request the court to approve a contract that was entered into by a group of bondholders for the purchase, operation, sale and the interest of each bondholder, is not germane to a foreclosure proceeding.

To what extent a court of chancery in a foreclosure litigation may consider questions independent of the foreclosure of the equity of redemption of the mortgagor, has been considered by courts of appeal of this State. In the case of *Baker v. Updike,* 155 Ill. 54, the court in the course of its discussion involving litigation, said:

"The execution of a mortgage on the land sold, thereby creating an express lien thereon, is inconsistent with and excludes the theory of an implied lien. So here, the bill, by alleging a mortgage, alleges, in effect, a waiver of an implied or vendor's lien, and excludes the possibility of the existence of such lien; and the complainant cannot, on failing to prove his allegations as to a mortgage, abandon them and treat the case as though such allegations had not been made, and seek to obtain a decree upon a theory which his bill, as drawn, expressly excludes." Again, in the case of *Parlin & Orendorff Co. v. Galloway,* 95 Ill. App. 60, the court held that a party cannot,

by a cross-bill on a mere bill to foreclose a mortgage, compel the complainant to litigate an adverse title.

In the case of *Smith v. Kenny,* 89 Ill. App. 293, the court held that a court of equity has no jurisdiction to adjudicate upon an adverse legal title held by a party defendant in a foreclosure suit, but the court should dismiss the suit as to such defendant.

On the question of the right of the court in a foreclosure proceeding to establish and divide the line between the land covered by the trust deed and the land added by accretions, the court held in the case of *Murray v. Gordon,* 182 Ill. App. 460, that a cross-bill is properly demurrable. The court likewise in the case of *Holinger v. Dickinson,* 183 Ill. App. 122, an abstract opinion, where a purchaser from the mortgagor filed a cross-bill for an accounting, held that on a bill to foreclose a trust deed, a person made a party defendant and claiming an interest in the property as a purchaser thereof from the mortgagor subsequent to the execution of the trust deed, was not entitled to file a cross-bill praying for an accounting with the mortgagor, since to permit him to do so would delay the foreclosure proceeding and incumber the record with questions not necessary or properly involved in such proceeding.

The purpose of having the court approve the so-called reorganization plan, which we believe is a misnomer, is to continue the litigation so that the court may supervise the plan and enforce its provisions. By the contract of the mortgagor, the only relief the holder of the security has is by virtue of the trust deed, and in the instant case the trustee, upon default after notice to perform, instituted foreclosure proceedings for the purpose of foreclosing the mortgagor's equity of redemption. By the entry of the decree the rights of all parties were merged in the decree;—*Lightcap v. Bradley,* 186 Ill. 510—and upon

a sale of the property and approval by the court of such sale, the litigation is at an end, except that during the redemption period the income, if any, is either to be paid to the owner of the equity or will be applied upon the amount due by the terms of the deficiency decree.

At this point it might be well to consider the agreement submitted to the court by the three men who acted as the Bondholders' Committee. The plan of reorganization provides:

"(a) A new corporation called 'New Company' will be organized under the laws of the State of Illinois, having a capital stock of 2300 shares without par value. The nominee of the committee, if title will be acquired in the foreclosure, will convey the property to the New Company.

"(b) The capital stock will be issued to Trustees, the number of shares corresponding with the numbers of the bonds deposited, who will receive trust certificates in lieu of their bonds.

"(c) The capital stock will be deposited under a voting trust for 10 years unless sooner terminated by 51%.

"(d) The trustee shall not vote for a sale if one third of the beneficial owners will object."

The Bondholders' Committee, which consisted of George W. Rossetter, Jay C. McCord and Sidney H. Kahn, was selected as the voting trustees. Sidney H. Kahn was associated with Straus Securities Corporation, and was an officer and director of Securities Service Corporation, and was formerly an officer and director of S. W. Straus & Co., which originally underwrote the bond issue. The trust agreement as proposed will be in form satisfactory to counsel for the committee, and in the event of a resignation of any of the trustees, the remainder of the trustees may designate their successor. The trustees shall not be

liable for any error of judgment or for any act done or step taken or omitted or for any mistakes of fact or law.

From the contract it further appears that it might be advisable in order to pay taxes, expenses of foreclosure and reorganization to place a first mortgage and to utilize the proceeds for such purposes and the new company may place such mortgage.

As to the distribution of the new securities, it is provided that one certificate of deposit in said trust shall be issued to the owner of each $100 bond.

The contract also provides that the management of the property will be under the supervision of the board of directors of the new company and will be elected by the trustees. Dividends will be declared by the board of directors as the financial condition of the company will warrant. The active management of the property will be placed in the hands of such persons or firm as are regarded as capable by the trustees.

Then follows what we regard as a rather significant provision by which it is provided that bondholders who have previously deposited need take no action to approve the plan. Dissenters must within 30 days file (1) a written notice of dissent; (2) pay the committee for expenses and compensation on the basis of three per cent of the face amount of the bonds.

The contract then provides what the nondepositing bondholders would be entitled to if they fail to take advantage of the offer provided for by the contract.

The court by its order approved the sale, as well as the plan of reorganization, and ordered that new securities be issued in conformity with the plan, and that all persons, firms and corporations are restrained and enjoined from interfering with the carrying out of the provisions thereof, and the court reserves the jurisdiction for the purpose of supervising and carry-

ing out said plan of reorganization and orders the committee to file its report of the consummation of the plan. Upon what theory the court ordered that new securities be issued in accordance with the plan, does not appear, so far as we have been able to find from the record, and as we have indicated, the court by reservation of jurisdiction to carry out said plan of reorganization, continues this litigation for at least 10 years, the time in which the trustees have control of this corporation, and the only evidence of an interest in this so-called plan is a certificate of deposit in the trust to be issued to the owner for each $100 bond, etc. The suggestion that new securities may be issued is made only to make it feasible for the committee to present the plan for the issuance of new securities to the Federal Trade Commission for its approval. The purpose is self-evident, when we consider the suggestions of the *amicus curiae,* in which they state:

"If an equity court in cases of this type is without power to pass upon the fairness of the plan under which parties in interest have combined to bid in property at a foreclosure sale at which the court knows there are no intending or available bidders, then bondholders and other parties in interest are put to the extreme expense, liability, and delay of registering with the Federal Trade Commission and are deprived of the benefits of the exemption provided by that Commission in those cases in which the fairness of the plan has been determined by a court."

This is rather unusual procedure. The court in a foreclosure proceeding is not interested in the fact that a group of bondholders entered into a contract and bid for the property and in time received a deed; nor is the court called upon to approve the issuance of new securities under the terms of the contract.

This is wholly foreign to the purpose of a foreclosure proceeding.

In the petition presented to the court there appears the following with reference to the parties taking possession of the premises in question:

"It is expected that the court will shortly fix the date for the sale of the property—in order to effect a readjustment promptly and to avoid the necessity of awaiting the expiration of the 15 month period of redemption—the committee has made arrangements to acquire for the benefit of depositing bondholders title to the property, the second mortgage of $100,000, and the third mortgage of $60,000 from the various holders thereof for the aggregate sum of $3500.00—when the provisions of the escrow have been complied with title to the property will be held by a nominee of the committee for the benefit of the depositing first mortgage bondholders."

From this statement it is to be observed that the nominee of the bondholders is to take title when it is acquired, and we are familiar with the rule that during the period of redemption the bidder at a foreclosure sale is not entitled to possession of the real estate, for the reason that the bidder has no legal title which would justify the court's directing that possession be given to this bidder. In the case of *Lightcap v. Bradley,* 186 Ill. 510, the court said upon this question:

"A certificate of purchase does not purport to convey title, but on its face shows the contrary, by stating the amount of the bid and when the holder will be entitled to title if the premises are not redeemed. A purchaser is not entitled to possession by showing that he bid off the land at a sale. (*Johnson v. Baker,* 38 Ill. 98.) The purchaser of land under an execution of the foreclosure of a mortgage has no legal title, or right to be invested with a legal title, until the time

allowed for redemption has expired. (*Rockwell v. Servant*, 63 Ill. 424.) The certificate of purchase confers on the holder no title in the land. (*Huftalin v. Misner*, 70 Ill. 55; *Hays v. Cassell*, 70 Ill. 669.)''

So, we find that under the petition filed in the instant case the bondholders' committee will attempt to avoid the provision of the statute for redemption by the statement that it seeks to obtain title for that purpose. The obstacle, however, to this plan as we view it, is that there is a deficiency decree entered against Clarence Anderson in the sum of $243,115.67. The income from this property should be applied toward the reduction of this deficiency decree during the redemption period, and whatever is applied in partial payment of this deficiency inures to the benefit of all the bondholders. For that reason any agreement among this group of bondholders cannot avoid the redemption period by any agreement which may be entered into between the parties who may have some interest in the title to these premises. The approval of this so-called plan of reorganization by the court would not justify delivery of possession to the nominee of these bondholders.

In view of the suggestions offered by the attorneys in support of their position, it has been necessary for this court to amplify its opinion. We are still of the opinion that the conclusion reached by this court was a proper one, and we adhere to what was stated in our former opinion.

HALL, P. J., and DENIS E. SULLIVAN, J., concur.